IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

REGINALD C. GRAY,                )
                                 )
        Petitioner,               )
                                 )
        v.                        )    1:18CV997
                                 )
BRAD PERRITT,                    )
                                 )
        Respondent.              )

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Reginald C. Gray, a prisoner of the State of North Carolina, brings a Petition [Doc. #1] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which Respondent opposes with a Motion for Summary Judgment [Doc. #4] and Brief [Doc. #5]. According to the Petition, on March 11, 2003, in the Superior Court of Guilford County, North Carolina, Petitioner was convicted by a jury of first-degree murder and sentenced to life without parole. (Petition, §§ 1-6.) Petitioner pursued a direct appeal, but the North Carolina Court of Appeals affirmed his conviction and the North Carolina Supreme Court denied discretionary review on June 30, 2005. State v. Gray, No. COA04-478, 169 N.C. App. 457, 612 S.E.2d 446 (Table) (unpublished), rev. denied, 359 N.C. 638, 616 S.E.2d 927 (2005). Petitioner did not seek certiorari from the United States Supreme Court. Petitioner later filed a Motion for Appropriate Relief in the Superior Court of Guilford County on January 26, 2006, which that court denied on April 24, 2006. (Respondent's Brief, Exs. 7, 9.) Petitioner filed nothing further until March 6, 2013, when he filed a second Motion for Appropriate Relief, which was denied on July 7, 2014. (Respondent's Brief, Exs. 10, 12.) Finally, Petitioner filed a third

Motion for Appropriate Relief on April 26, 2017, which was denied on July 6, 2017. (Respondent's Brief, Exs. 13, 14.) Petitioner then petitioned for a writ of certiorari from the North Carolina Court of Appeals, but that court denied the petition on October 16, 2017. (Respondent's Brief, Ex. 16.) Finally, on September 20, 2018, Petitioner signed his current Petition and mailed it to this Court. The Court received the Petition on November 29, 2018, in an envelope postmarked November 15, 2018.

Facts

The basic facts of the case, as set out in the opinion of the North Carolina Court of Appeals on direct appeal are as follows:

> The evidence tended to show that, on 16 December 2001, police found the body of Andre Davis in the road at the scene of a shooting. Police located three .45 caliber shell casings and several bullet fragments at the scene, but no guns. Among the large number of people at the scene were Delathian Andre Zimmerman ("Zimmerman"), Edward Thompson ("Thompson"), Joshua Gillespie ("Gillespie"), Garcellas Keith Goode ("Goode"), and Farone Horne ("Horne"), collectively ("the witnesses"), who had been playing basketball nearby with the victim. The witnesses testified that they saw defendant drive into the neighborhood during the basketball game. As defendant approached his uncle's house, Davis called out to him asking when the two were going to fight. Davis started toward defendant, but others held him back as the two exchanged angry words. Davis asked defendant, "Can I get my one?" The witnesses testified that this meant Davis wanted a fair fight with defendant. The basketball game resumed when defendant entered his uncle's house. Defendant later drove away.
> 
> An hour or more later, defendant came back with several people in his car.[1] He got out of the car with a gun in his hand, but then put it away and told Davis they could settle things without it. Defendant and Davis began to fight with Davis slamming defendant to the ground, pinning him down and hitting him several times. Davis then choked defendant, who was bleeding badly from cuts to his lip, nose and eye. Two men dragged Davis off defendant and restrained him.

---

[1] Based on the trial transcripts in the record, the other individuals in the car with Petitioner were Alexis Anderson, Brian Baxter, and Antonio Cureton.

> Defendant then told Davis he was getting his gun, and Davis responded, "So it's going to be like that" and ran into his house. At least one of the witnesses testified that Davis said he was going to get his own gun. Meanwhile, defendant had gotten his gun from the car. When Davis emerged from his house and ran toward his car, defendant came up on the other side of the car and fired at Davis. The first shot struck Davis in the back and he fell to the ground. Defendant continued walking toward Davis and shot him three or four more times. Defendant then got back into his car and left the scene. An inmate who had been incarcerated with defendant testified that defendant killed Davis for disrespecting him.

Gray, No. COA04-478 at *1.

### Petitioner's Claims

Petitioner raises four possible claims for relief in an attachment to his Petition. The first assets that Petitioner's rights were violated when the prosecutor withheld exculpatory evidence in the form of statements from Alexis Anderson and Antonio Cureton that Petitioner's victim was armed and brandishing a firearm at the time Petitioner shot him and that Bryan Baxter removed the victim's weapon from the scene after Petitioner killed him, but before police arrived. Similarly, Petitioner's second claim contends that the prosecutor in Petitioner's case improperly threatened Anderson and Cureton to cause them to alter their statements to omit the fact that the victim brandished a weapon. Related to his first two claims, Petitioner's third claim states that the prosecutor and police did not investigate to determine whether or not Baxter removed the victim's weapon from the scene. Finally, Petitioner's fourth claim alleges that the prosecutor coerced testimony to create a false impression that Petitioner was the aggressor in the events and did not act in self-defense.

Discussion

As stated above, Respondent filed a Motion for Summary Judgment seeking denial of the Petition. In that Motion, Respondent raises multiple arguments, one of which is that Petitioner's claims were filed outside of the one-year limitation period, 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Turning first to subparagraph (A), a Petitioner's one-year limitation period ordinarily commences under that provision on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court must examine when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended. Here, Petitioner pursued a direct appeal, with the North Carolina Supreme Court denying review on June 30, 2005. Because Petitioner

4

did not seek review from the United States Supreme Court, his conviction became final when his time to do so expired on September 28, 2005. Petitioner's time to file in this Court under subparagraph (A) began to run on that date and ran until he filed his first Motion for Appropriate Relief approximately four months later on January 26, 2006. Properly filed attempts at collateral relief in the state courts toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Therefore, the limitations period remained tolled until April 24, 2006, when the first Motion for Appropriate Relief was denied. Petitioner did not seek review of that denial from the North Carolina Court of Appeals, and the statute of limitations began to run again shortly thereafter and expired in early 2007. See McConnell v. Beck, 427 F. Supp. 2d 578, 582-83 (M.D.N.C. 2006) (ruling that North Carolina law did not explicitly address time to seek review of denial of MAR, but that such time would not extend more than 30 days absent unusual circumstances); see also Leonard v. White, No. 1:10CV443, 2011 WL 1103793, at *2 (M.D.N.C. Mar. 23, 2011) (unpublished) (following McConnell and holding that where a petitioner's motion for appropriate relief was denied and he did not seek review in the North Carolina Court of Appeals, "his time under AEDPA began to run again, at the latest, within thirty days of the denial of his motion for appropriate relief"). Petitioner did file later attempts at relief in 2013 and 2017, but these were filed well after the deadline to file in this Court already passed. State filings made after the federal limitations period expires do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Petitioner's

5

claims are out of time under subparagraph (A) and are time-barred unless they are timely under another provision.

Petitioner does not make any arguments that subparagraphs (B) or (C) apply to provide him more time to file. However, he does rely on facts that he claims not to have discovered until after the denial of his first Motion for Appropriate Relief. Nevertheless, this does not make his Petition timely under subparagraph (D). Petitioner knew of the statements of Alexis Anderson at least by March 25, 2008, when she made those statements in an interview conducted by North Carolina Prisoner Legal Services on Petitioner's behalf. (Respondent's Brief, Ex. 13, Attach. and Ex 17.) Given that Anderson, as noted in the interview, was Petitioner's girlfriend and was present with him at the scene of the shooting, it is also likely that Petitioner could have known of her statements through reasonable diligence long before the interview. (Id.) In any event, she asserted in the 2008 interview that Petitioner's friend, Bryan Baxter, allegedly removed the victim's gun from the scene. (Id.) Therefore, Petitioner also knew of Baxter's alleged actions at that time. However, Petitioner pursued no more state relief until 2013, over four years later and well beyond the one-year limitations period. As for Antonio Cureton, Petitioner's third MAR includes a purported affidavit from him dated July 20, 2016. (Id.) However, in that statement, Mr. Cureton explains that he was present on the scene of the shooting because Petitioner asked him and another friend to accompany Petitioner and Anderson to confront the victim. (Id.) Again, Petitioner would have known of his potential testimony during his entire case. Petitioner does not allege that he ever attempted to obtain his statement at any point prior to 2016, which is more than a decade after his conviction. In the end, Petitioner does not show that he could not have known of any of

6

the facts supporting his claims through reasonable diligence until such time that his current Petition would be timely. Therefore, his Petition is untimely under § 2244(d)(1).

Petitioner opposes Respondent's assertion of the statute of limitations by stating in his Petition that he has not had access to legal materials or proper counsel, which appears to be an argument in favor of equitable tolling. The Supreme Court has determined that the one-year limitation period is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 649 (2010). However, a petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. (internal quotation omitted). In order to demonstrate diligence, the prisoner must show diligence throughout the entire post-conviction process; waiting years to raise claims shows a lack of due diligence. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Petitioner's argument is essentially that he is a layman of the law. However, unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished). Petitioner also argues that he was diligent in pursuing his rights, but all of his attempts at relief, including those in this Court, occurred after the expiration of the statute of limitations. This does not demonstrate diligence. Petitioner also states that Hurricane Florence flooded the mailroom of the prison where he was housed at some point. However, as Respondent points out, Hurricane Florence made landfall in North Carolina in

7

2018, well after Petitioner's statute of limitations had expired.[2] In the end, Petitioner points to no extraordinary circumstances supporting equitable tolling or to any facts supporting a finding of diligence on his part.

Finally, Petitioner contends that a fundamental miscarriage of justice would occur if the Court did not consider his claims because "the Petitioner can demonstrate that more likely than not in light of the newly discovered evidence no reasonable juror would find him guilty beyond a reasonable doubt." (Petition, § 18.) Although Petitioner states in his Response Brief [Doc. #13 at 5] that he is not asserting his innocence, only that a miscarriage of justice would occur, the language he relies upon for an exception to the statute of limitations is connected to claims of actual innocence. The United States Supreme Court has held that a claim of actual innocence can act as a "gateway" to allow an otherwise procedurally defaulted or time-barred claim to be heard. McQuiggin v. Perkins, ___ U.S. at ___, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. We have recognized, however, that a prisoner 'otherwise subject to defenses of abusive or successive use of the writ [of habeas corpus] may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence.' In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." (internal citations omitted)). To demonstrate actual innocence, "a petitioner must show that it is more likely than not that no

---

[2] It appears that Petitioner's reference to Hurricane Florence may be an attempt to explain why his Petition, which was signed September 20, 2018, was not received until November 29, 2018. However, even if the Court uses the September 20, 2018 date for the Petition, it is still clearly time barred, since the one-year limitations period had expired years earlier, as set out above.

reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin v. Perkins, ___ U.S. at ___, 133 S. Ct. 1924, 1935 (2013). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

Here, Petitioner's presentation falls far short of such a showing. He presents no exculpatory scientific evidence or critical physical evidence which could exonerate him. He does attempt to offer eyewitness accounts, but those accounts are from his friends who accompanied him at the scene and were made years after his killing of the victim. The statement he submits from Baxter concerning the removal of the victim's gun is allegedly notarized, but is also undated and consists of only a brief typed statement with blank signature lines where Baxter signed. (Respondent's Brief, Ex. 13, Attach.) Moreover, these statements or any testimony consistent with them would not negate the testimony of the multiple witnesses at Petitioner's trial. The statements do not, as Petitioner claims, establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. His claims are time barred and the Petition should be dismissed.

IT IS THEREFORE RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #8] be granted, that the Petition [Doc. #1] be denied, that this action be dismissed, and that, there being no substantial issue for appeal concerning the denial of a

constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability not issue.

This, the 5th day of February, 2020.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge